Ryan Heuwinkel
Brandon R. Shannon
Bohyer, Erickson, Beaudette & Tranel, PC
PO Box 7729
Missoula, MT 59807-7729
Telephone (406) 532-7800
Email: mail@bebtlaw.com7

*Attorneys for Canal Insurance Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CANAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>IRON HORSE TOWING, INC. and<br>ASAP TRANS CORP,<br><br>Defendants. | Cause No. CV-_____<br><br>**COMPLAINT FOR<br>DECLARATORY JUDGMENT** |

Plaintiff Canal Insurance Company ("Canal") files this Complaint for Declaratory Judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, against Defendants Iron Horse Towing, Inc. ("Iron Horse") and ASAP Trans Corp ("ASAP") alleging as follows:

## NATURE OF THE ACTION

1.      Canal seeks a declaratory judgment under 28 U.S.C. §§ 2201-02 that is has no obligation to any party with respect to the matter *Iron Horse Towing, Inc. v. ASAP Transportation,* Cause No. DV-32-2021-0000868-DS, Montana's Fourth Judicial District Court, Missoula County (the

"Underlying Action"), in which Iron Horse secured a $67,155 Default Judgment against a "ASAP Transportation." **Exhibit A,** Default Judgment dated June 24, 2022.

2. "ASAP Transportation," the defendant in the Underlying Action, may be ASAP, a motor carrier that was formerly insured by Canal, but it is Iron Horse's burden to prove that "ASAP Transportation" is Canal's former insured ASAP.

3. Inclusive of interest accrued between June 24, 2022 and October 20, 2025, Iron Horse has demanded that Canal pay $172,194.66, and continually accruing interest, on the Default Judgment under the MCS-90 Endorsement in the insurance policy issued by Canal to ASAP, and has threatened suit against Canal if it does not do so, **Exhibit B,** Letter dated October 20, 2025.

## **THE PARTIES**

4. Plaintiff Canal was and is now a company organized and existing under the laws of the State of South Carolina, with its principal place of business in Greenville, Greenville County, South Carolina and was and is now authorized to do business in the State of Montana.

5. Defendant Iron Horse is now a company organized and existing under the laws of the State of Montana, with its principal place of business

in Missoula, Missoula County, Montana and was and is now authorized to do business in the State of Montana. As such, Iron Horse is a citizen of Montana for purposes of diversity jurisdiction.

5.      Defendant ASAP is a company organized and existing under the laws of the State of Illinois, with its principal place of business in Homer Glen, Illinois. ASAP operates under DOT Number 2075148.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this suit under 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

7.      This Court has personal jurisdiction over Iron Horse because it is found in Montana. Iron Horse is a citizen of Montana for purposes of federal diversity jurisdiction.

8.      This Court has personal jurisdiction over ASAP because the claim for relief alleged against ASAP arises from the transaction of business within Montana and the commission of acts withing Montana that resulted in the Underlying Action and for which Default Judgment has been entered against ASAP. ASAP is a citizen of Illinois, for purposes of diversity jurisdiction.

9. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, because Iron Horse has demanded that Canal pay $172,194.66 on a Default Judgment entered against "ASAP Transportation." Iron Horse further claims that post-judgment interest continues to accrue, further adding to the amount in controversy.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred within the District of Montana.

11. Venue is proper in the Missoula Division of this Court pursuant to Local Rule of Procedure 3.2(b) because Iron Horse is based in Missoula County, Montana, and it seeks to recover on a default judgment entered in Missoula County, Montana, and Missoula County, Montana lies within the Missoula Division of this Court.

12. Title 28 U.S.C. § 2201-02 authorizes this Court to grant the relief requested by Canal.

## **BACKGROUND FACTS**

13. Canal issued insurance policy No. I-233373001-1 to ASAP, operating under US DOT # 2075148, for the policy period June 13, 2020, at 12:01 am, to June 13, 2021, at 12:01 am (the "Policy"). A certified Bates Numbered copy of the Policy, with premiums redacted, is attached hereto

as **Exhibit C**. The Policy was cancelled effective January 11, 2021, Ex. C, Canal 0293.

14.    The Policy contains a Business Auto Coverage Form with an MCS-90 Endorsement for Motor Carrier Policies of Insurance for Public Liability. Ex. C, at Canal 0021-41, 0084 – 86.

15.    Iron Horse alleges that in August of 2020, "ASAP Transportation" accidentally and negligently wrecked a 2007 Volvo Semi-tractor and a 2013 utility trailer, causing property damage, including limited damage to the roadway. **Exhibit D**, Complaint and Demand for Jury Trial in the Underlying Action**, ¶ 5**.

16.    Iron Horse does not own or lease the allegedly damaged roadway, nor does it have any right to recover money for damage to the roadway.

17.    Iron Horse further alleges that the Montana Highway Patrol authorized and directed Iron Horse to respond to the accident involving "ASAP Transportation." Ex. D, ¶ 6.

18.    Iron Horse further alleges that "ASAP Transportation" authorized Iron Horse to assist with clearing the resulting road hazard and/or damage caused from the wreck which, among other things, required Iron Horse to remove debris from the public roadway, recover "ASAP

Transportation's" vehicle and equipment, and store "ASAP Transportation's" wrecked and damaged equipment." Ex. D, ¶ 7.

19.    Iron Horse further alleges it issued an invoice to "ASAP Transportation" on August 14, 2020 **(Exhibit E)** in the amount of $7,600 for services Iron Horse provided, reminding "ASAP Transportation" that ongoing storage fees accrued each day "ASAP Transportation's" equipment was stored at Iron Horse's facility. Ex. D, ¶ 8.

20.    Iron Horse further alleges that as of July 16, 2021, the date Iron Horse filed its Complain the Underlying Action, $32,875 remained due and owing on the invoice, and that storage fees continued to accrue at $75 per day. Ex. D, ¶ 9.

21.    Iron Horse claims it served "ASAP Transportation" with the Summons and Complaint in the Underlying Action by serving Tamara Herring, of All American Agents of Process, the alleged registered agent for ASAP on August 11, 2021. **Exhibit F.**

22.    "ASAP Transportation" did not appear in the Underlying Action and default was entered against "ASAP Transportation" on December 17, 2021. **Exhibit G.**

23.    On June 24, 2022, the court in the Underlying Action entered Default Judgment against "ASAP Transportation" in the amount of $67,155.00, bearing interest until paid. Ex. A.

24.    The $67,155.00 Default Judgment was based on the following categories of damages allegedly suffered by Iron Horse:

> This Judgment consists of the following damages:
>
> The original principal amount stated on Plaintiff's invoice .........................$7,600
>
> Storage fees calculated at $75.00 per day
> from August 14, 2020 through June 23, 2022 ..............................................$50,925
>
> Costs ......................................................................................................... $170
>
> Prejudgment interest accrued at 7.75% per
> annum on the principal, storage fees, and costs
> ($12.46 per day) from August 14, 2020 to June 23, 2022.............................$8,460
>
> Storage fees in the amount of $75.00 per day from
> June 23, 2022 until tractor in removed from Plaintiff's facility.....................$TBD
>
> Post judgment interest at 7.75%
> pursuant to Mont. Code Ann. § 25-9-205 .....................................................$TBD

Ex. A, p. 2.

25.    No person or entity notified Canal of the August 2020 Accident, the Underlying Action, or that its insured ASAP or "ASAP Transportation" had been served with process in the Underlying Action until Canal received Iron Horse's October 20, 2025 Demand Letter (Ex. B) on October 20, 2025. **Exhibit H**, Dec. of Canal, ¶¶ 4-6.

26.    By the time Canal received the demand on October 20, 2025, Iron Horse was demanding Canal pay $172,194.36 in damages, plus continuing interest, on the $67,155.00 Default Judgment that had been entered more than three years prior.

27.    On October 29, 2025, Canal contacted its former insured ASAP by phone to investigate the subject accident and the Default Judgment. Canal was advised that ASAP was unfamiliar with the accident. Ex. I, ¶ 7.

28.    On November 25, 2025, Canal contacted ASAP via email seeking information about the subject accident and the Underlying Lawsuit but was told by ASAP that it had no information regarding the Underlying Lawsuit. Ex. I, ¶ 8.

29.    ASAP asked for information held by Canal, which Canal provided, but ASAP did not respond substantively at that time. *Id.*

30.    Canal again followed up with ASAP via email on February 9, 2026, relaying the police report for the subject accident and asking for information on the accident, communications between ASAP and its registered agent regarding service of process, communications between ASAP and other parties regarding the accident and the lawsuit, information on the driver, and the bill of lading for the cargo carried by the trailer. *Id.,* ¶ 9.

31.    On February 9, 2026, ASAP advised Canal: (1) that ASAP did not own or lease the tractor or trailer involved in the accident; (2) that ASAP had no communications to or from its registered agent regarding service of the Underlying Lawsuit; (3) that ASAP had no record of communications from ASAP notifying Canal of the Underlying Lawsuit; (4) that ASAP had no communications with Iron Horse Towing or its attorneys; and (5) that the driver or a bill of lading for the cargo were "N/A". *Id.,* ¶ 10.

32.    The Covered Autos Liability Coverage of the Business Auto Coverage Form of Policy provides as follows:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
>
> We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost  or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

Ex. C, at Canal 0031.

33.    The Business Auto Coverage Form of Policy provides that "'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these." Ex. C, at Canal 0039.

34.    The Business Auto Coverage Form of Policy provides that

"'Property damage' means damage to or loss of use of tangible property."

Ex. C, at Canal 0041.

35.    The Business Auto Coverage Form of Policy provides:

2.    Duties In The Event Of Accident, Claim , Suit Or Loss

We have no duty to provide coverage under this Policy unless there has been full compliance with the following duties:
a.    In the event of "accident", claim, "suit " or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include :
(1)    How, when and where the "accident" or "loss" occurred;
(2)    The "insured's" name and address; and
(3)    To the extent possible, the names and addresses of any injured persons and witnesses .

b.    Additionally , you and any other involved "insured" must:
...

(2)    Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".
(3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

Ex. C, at Canal 0037.

36.    The Business Auto Coverage Form of Policy provides:

3.    Legal Action Against Us

No one may bring a legal action against us under this Coverage Form until:

a.    There has been full compliance with all the terms of this Coverage Form;

Ex. C, at Canal 0037.

37.    The Policy contains Form MCS-90, Endorsement for Motor Carrier Policies of Insurance for Public Liability under Sections 29 and 30 of the Motor Carrier Act of 1980 ("MCS-90"). Ex. C, Canal 0084-86.

38.    The MCS-90 Endorsement provides:

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, *any final judgment recovered against the insured for public liability* resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980  regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.

Ex. C, Canal 0085 (emphasis added).

39.    The MCS-90 Endorsement provides that "Public Liability means liability for bodily injury, property damage, and environmental restoration." Ex. C, Canal 0085.

40.     The MCS-90 Endorsement provides that "Bodily Injury means injury to the body, sickness, or disease to any person, including death resulting from any of these." Ex. C, Canal 0085.

41.     The MCS-90 Endorsement provides that "Property Damage means damage to or loss of use of tangible property." Ex. C, Canal 0085.

42.     The MCS-90 Endorsement provides that "Environmental Restoration means restitution for the loss, damage, or destruction of natural resources *arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of <u>any commodity transported</u> by a motor carrier*." Ex. C, Canal 0085 (emphasis added).

## COUNT I – SEEKING A DECLARATORY JUDGMENT THAT CANAL HAS NO OBLIGATION WITH RESPECT TO THE SUBJECT ACCIDENT, THE UNDERLYING ACTION, OR THE DEFAULT JUDGMENT

43.     Canal incorporates all prior allegations by reference as if set forth fully herein.

44.     There is no coverage under the Policy or the MCS-90 for the claims alleged in the Underlying Action or the Default Judgment entered in the Underlying Action because the Iron Horse has not established that Default Judgment has been entered against Canal's former insured ASAP.

45.    There is no coverage under the Policy for the claims alleged in the Underlying Action or the Default Judgment entered in the Underlying Action because the Underlying Action does not allege ASAP is liable for, and Default Judgment does not hold ASAP liable for, bodily injury.

46.    There is no coverage under the Policy for the Underlying Action or the Default Judgment entered in the Underlying Action because the Underlying Action does not allege ASAP is liable for, and Default Judgment does not hold ASAP liable for property damage, but rather pure economic loss, which is not covered by insurance. *Farmers Ins. Exch. v. Minemyer*, 2023 MT 138, ¶ 30, 413 Mont. 60, 77, 532 P.3d 837, 849 ("Montana courts have consistently held that in order for economic loss to be covered by insurance a direct physical injury to tangible property must occur. No physical injury to [] property occurred and [Plaintiffs'] alleged economic loss does not qualify as "property damage" under the Farmers CGL Policy.") (quoting *Graber v. State Farm Fire & Cas. Co.*, 244 Mont. 265, 269, 797 P.2d 214, 216 (1990) ).

47.    Even if (1) the Underlying Action alleged ASAP was liable for bodily injury or property damage, or (2) the Default Judgment entered in the Underlying Action held ASAP liable for bodily injury or property damage, there is no coverage under the Policy because ASAP breached the

notice and cooperation provisions of the Policy, resulting in prejudice to Canal. *Baadsgaard v. Safeco Ins. Co.*, No. CV-19-75-GF-BMM, 2020 U.S. Dist. LEXIS 235643, at *9, 2020 WL 7353516 (D. Mont. Dec. 15, 2020) *aff'd by* No. 20-36104, 2021 U.S. App. LEXIS 33394, at *1-2 (9th Cir. Nov. 10, 2021); Ex. I, ¶ 11.

48.    Canal cannot owe ASAP a duty to defend under the MCS-90 Endorsement because it imposes no defense obligations on an insurer. *Harco Nat. Ins. Co. v. Bobac Trucking Inc.*, 107 F.3d 733 (9th Cir. 1997).

49.    There is no coverage for the Default Judgment under the MCS-90 Endorsement because the Default Judgment is not for public liability, meaning bodily injury, property damage, or environmental restoration.

50.    Additional coverage defenses may apply, and Canal reserves all rights available to it under the law, the Policy, and the MCS-90 Endorsement.

WHEREFORE, Canal requests this Court enter Judgment against Iron Horse and ASAP as follows:

A.    Declaring that Canal has no obligation to provide defense or indemnity coverage under the Policy or the MCS-90 to ASAP for the Underlying Action, the Default Judgment, or the accident out of which they arise;

B.      Declaring that Canal has no obligation to pay Iron Horse any amounts under the Policy or the MCS-90 for the Underlying Action, the Default Judgment, or the accident out of which they arise;

C.      Ordering the Defendants to pay Canal its reasonable costs incurred in prosecuting this lawsuit; and

D.      Providing further relief the Court deems necessary.

DATED March 18, 2026.

/s/ Ryan Heuwinkel
Ryan Heuwinkel
BOHYER, ERICKSON, BEAUDETTE &
TRANEL, PC
*Attorneys for Plaintiff*